UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CIV. ACTION NO.: 20-60503-RAR
20-60906-RAR
20-60966-RAR
Honorable Rodolfo Armando Ruiz II

L.T. Case No.: 13-11065-BKC-PGH
Honorable Paul G. Hyman

TINA M. TALARCHYK, ESQUIRE,

Appellant.

ON APPEAL FROM AN ORDER OF THE U.S. BANKRUPTCY COURT OF THE
SOUTHERN DISTRICT OF FLORIDA

**APPELLANT'S INITIAL BRIEF**

**Douglas C. Broeker, Esq.**
Florida Bar No. 306738
**SWEETAPPLE, BROEKER & VARKAS, P. L.**
12700 Biscayne Blvd., Suite 402
Miami, FL 33181
Tel.: (305) 374-5623
Fax: (305) 358-1023
docservice@broekerlaw.com
doug@broekerlaw.com
*Counsel for Appellant*

## TABLE OF CONTENTS

**Section**                                                        **Page**

**TABLE OF CONTENTS** ......................................................................... ii

**TABLE OF AUTHORITIES** ...................................................................... i

**REQUEST FOR ORAL ARGUMENT** ......................................................... 1

**STANDARD OF REVIEW** ........................................................................ 1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** ................................ 1

**STATEMENT OF THE FACTS** ................................................................... 3

**SUMMARY OF THE ARGUMENT** ............................................................. 8

**ARGUMENT** .......................................................................................... 9

   **A.**   **The Orders Under Review Are Erroneous As They Are Founded Upon An Order That Was Superseded, Merged And Satisfied.** ................................... 10

   **B.**   **The Bankruptcy Court Exceeded Its Authority When It Sua Sponte Reopened The Closed Bankruptcy Case** .................................................................. 12

   **C.**   **No Justiciable Issue** ...................................................................... 19

   **D.**   **The Bankruptcy Court Erred In Entering Orders In Violation Of Rule 8025, FRBP** 20

**CONCLUSION** ....................................................................................... 21

**CERTIFICATE OF COMPLIANCE** ........................................................... 21

**CERTIFICATE OF SERVICE** .................................................................... 22

## TABLE OF AUTHORITIES

Cases

*Baltimore S.S.*, 274 U.S. at 319, 47 S.Ct. at 602 ........................................................... 18
*Bilzerian v. Bilzerian*, 100 F.3d 886 (11th Cir. 1996) ...................................................... 1
*Bilzerian v. Bilzerian*, 100 F.3d 886 (11th Cir. 1996). ..................................................... 1
*Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872) ............................................... 8, 21
*Chambers* 301 U.S. at 49, 111 S.Ct. at 2135, 115 L.Ed.2d at 48 ............................... 15
Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991)15
*Connecticut State Dental Ass'n v. Anthem Health Plans*, 591 F.3d 1337, 1343 (11th Cir. 2009) . 1
*Credit One Bank, N.A. v. Anderson (In re Anderson)*, 560 B.R. 84 (S.D.N.Y. 2016) ................. 20
*D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 206–208, 52 S.Ct. 322, 76 L.Ed. 704 (1932) ......................................................................................................................... 16
*DeLauro v. Porto (In re Porto),* 645 F.3d 1294 (11th Cir. 2011) ................................. 15
*Ernie Haire Ford*, 764 F.3d at 1326 ............................................................................ 18
*Hirschfeld v. Bd. of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) ........................... 20
*In re Atari*, 2016 BL 125936 (Bankr. S.D.N.Y. Apr. 20, 2016) ................................... 13
*In re Axl Industries, Inc.*, 127 B.R. 482, 484 (S.D.Fla.1991) ..................................... 17
*In re C&C Dev. Grp., LLC* (Bankr. S.D. Fla. 2012) ................................................... 17
*In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994) ................................. 15
*In re E.S. Professional Services, Inc.*, 335 B.R. 221,226 (Bankr. S.D. Fla. 2005) ..................... 17
*In re Easley-Brooks*, 487 B.R. 400 (Bankr. S.D.N.Y. 2013) ..................................... 14
*In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990) ....................................... 17
*In re New York, Skyline, Inc.* , 520 B.R. 1, 3–4 & n.4 (S.D.N.Y. 2014) ..................... 20
In re PlusFunds Grp., Inc., 2015 BL 113361 (Bankr. S.D.N.Y. Apr. 21, 2015) ......... 14
*Kabro Assocs. of West Islip*, 111 F.3d at 273–74 ........................................................ 18
*Law v. Siegel*, 134 S. Ct. 1188, 188 L.Ed.2d 146, 82 USLW 4140 (2014) ................. 16
*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) .................................................. 18
*Morton v. Mancari*, 417 U.S. 535, 550–551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ................. 16
*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994) ........................... 18
*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). ..................................... 1

Statutes

11 U.S.C. § 105 ............................................................................................................. 15
11 U.S.C. § 105(a) ........................................................................................................ 16
11 U.S.C. § 350 ............................................................................................................. 15
11 U.S.C. § 350(b) ........................................................................................................ 13
11 U.S.C. 105(a) ........................................................................................................... 15
11 USC § 350(a) ........................................................................................................... 16
section 524(a) of the Bankruptcy Code ...................................................................... 13

Other Authorities

*Ruling Provides Guidance on Standard to Reopen Fully Administered Chapter 11 Case "for Other Cause"* (Jones Day Bankruptcy Articles) (September 30, 2016) ................................. 13

<u>Rules</u>

Bankruptcy Rule 9024(1) ........................................................................................................ 13

Federal Rule of Bankruptcy Procedure 8025(a) ...................................................................... 20

Florida Local Rule 87.4(f). ....................................................................................................... 1

<u>Treatises</u>

Collier on Bankruptcy ¶ 350.03 (16th ed. 2016) ...................................................................... 13

## REQUEST FOR ORAL ARGUMENT

Appellant requests oral argument in this cause pursuant to Southern District of Florida Local Rule 87.4(f).

## STANDARD OF REVIEW

On Appeal from a bankruptcy court's final orders, the appellate court reviews determinations of law *de novo* and factual findings under the "clearly erroneous" standard. *See Bilzerian v. Bilzerian*, 100 F.3d 886 (11th Cir. 1996). Discretionary decisions of a lower court are reviewed for abuse of discretion. *Connecticut State Dental Ass'n v. Anthem Health Plans*, 591 F.3d 1337, 1343 (11th Cir. 2009). A finding of fact is clearly erroneous when a reviewing court finds that "although there is evidence to support [the lower court's] finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A reviewing court may, however, "look carefully" to discover if the court below based its findings upon incorrect legal principles. If the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The issues on appeal are:

1.       Whether the Bankruptcy Court erred in denying a Motion for Enlargement of Time when both Counsel and Appellant, personally, stated serious practice/personal issues and family responsibilities arising from the global coronavirus pandemic that obstructed them from timely complying with or addressing the issues related to the subject Orders.

1

2.      Whether the Bankruptcy Court erred in *sua sponte* reopening a closed Chapter 11 bankruptcy case that was administered and voluntarily dismissed by the Debtor on March 10, 2014. [D.E. 225].

3.      Whether the Bankruptcy Court erred in entering orders in violation of Rule 8025, FRBP and whether the Bankruptcy Court had jurisdiction to enter any of the Orders on appeal in that the District Court Order had been appealed to the Eleventh Circuit Court of Appeals on February 24, 2020.

4.      Whether the Bankruptcy Court was authorized to reopen, *sua sponte*, a closed and dismissed case which has not had an estate, assets or debtor since March of 2014, when the Bankruptcy Court's jurisdiction was limited pursuant to the Chief Judge's General Order 2020-01, dated February 8, 2020, and the Bankruptcy Judge's authority as conferred by the 11th Circuit was limited to mediating cases.

5.      Whether the Bankruptcy Court's Orders are "extra-judicial" in that the underlying bankruptcy case had been dismissed in March of 2014, after a fulsome sale and payment of all creditors, at which time all remaining assets and monies vested back with the Debtor so that there is no "case or controversy", no jurisdiction and no adverse parties, other than the Bankruptcy Court attempting to rewrite and/or reissue an Order that the District Court found was a nullity.

6.      Whether the repeated actions of the Bankruptcy Court, when no party sought to "reopen" the instant bankruptcy case, against Appellant amount to pervasive evidence of bias by the Bankruptcy Court against Appellant.

7.      Whether the Bankruptcy Court erred by entering Orders relating to this matter when all property of the Estate reverted to the Debtor when the case was dismissed, and the Debtor has

signed multiple affidavits asking the Bankruptcy Court to stop entering Orders relating to her Bankruptcy Attorney and transactions relating to her properties.

8.       Whether the Orders of the Bankruptcy Court fail to consider the Debtor's objections to publicizing her private transactions, which objections have never been heard by the Bankruptcy Court.

## STATEMENT OF THE FACTS

Appellant respectfully requests the Court review the factual recitation of the underlying Chapter 11, Appellant's Trust Account Records, Judges Olson and Hyman and Errors in the Orders on Appeal as stated in Appellant's "Motion For Stay Pending Appeal" and the attached Exhibits, filed May 28, 2020 [Doc. 10] in Case No 20-cv-60906-RAR, in the proceedings herein.

The underlying Chapter 11 case was dismissed, on March 10, 2014, with the consent of all interested parties, and all creditors were paid in full, with a surplus going back to the Debtor.  The former Bankruptcy Judge[1], John K. Olson ("JKO"), required fee applications to be filed in the dismissed Chapter 11 (which was highly unusual as, after dismissal all surplus funds vested with the Debtor which meant that the Debtor could pay her counsel whatever they agreed upon; bankruptcy approval was not necessary or appropriate) and JKO approved all of the Debtor's professionals' fee applications[2] with the exception of the Appellant's [ECF# 245] ("1st JKO Order") and set an evidentiary hearing to review Appellant's "accounting"  [ECF# 270].  The 1st

---

[1] When JKO was not reappointed, the Eleventh Circuit accepted applications for the Fort Lauderdale Duty Station.  It was announced that Paul G. Hyman, Jr., a retired but recalled judge would sit in the Fort Lauderdale Duty Station until the replacement judge was seated which Chief Judge Isicoff expected to occur the "second week of May, 2020" [Doc. 10].  Judge Peter D. Russin was "seated" by Order dated August 11, 2020 and announced on Friday August 14, 2020.

[2] The Fee Applications included those who assisted the Appellant in the 363 sale of the Debtor's assets (real property in multiple states): Real Estate Counsel, Realtors in NY and Fla.; two Special Litigation Counsel Firms and two of Appellant's former partners.

JKO Order [ECF# 245] was particularly disparaging of the Appellant, her abilities, including a personal attack on Appellant as a person and lawyer, and ordering the Order "Tagged for publication" meaning it would be published nationally [ECF# 245].  On January 29, 2015, Appellant's counsel filed a Motion to Recuse JKO (on behalf of both the Debtor and Appellant) [ECF# 290].  JKO denied the motion to recuse and continued entering a series of Orders, one more draconian than the prior, morphing and increasing the "terms and conditions" of what JKO directed, which led to the "Contempt Order" which required Appellant to turn over her Trust Account records relating to the Debtor to an Examiner appointed by the U.S. Trustee, referred Appellant to the Florida Bar, required Appellant to pay the amount of $10,949.50 to the Clerk of Court and ordered Appellant's incarceration.

Appellant paid the funds to the Clerk of Court [ECF# 340-1], took an immediate Appeal [ECF# 308] and moved for Stay [ECF# 313]. The District Court entered a Stay Order during the pendency of Appeal and, despite that Order, JKO evidently exhorted the Marshalls to arrest Appellant, which occurred, then the arrest was brought to the District Court's attention and Appellant was later released. See, Appellants' *Affidavit in Support of Motion for Stay Pending Review* and copy of the deposit to the Clerk of Court filed in the Cooke Appeal. [Doc. 12-1]  The case was on appeal for over three years, and when JKO was no longer on the bench because his appointment was not renewed, the District Court entered an Order Dismissing Appellant's appeal of this "Arrest Order" finding it a "nullity".  During this time, the Florida Bar investigated Appellant's Trust Account records relating to this matter and closed the Bar case. Also during this time, the Bankruptcy case was closed by the Clerk.

Soon after the prior bankruptcy judge's ("JKO")  term expired, on February 14, 2020, the District Court entered an Order ("Cooke 2020 Order") which noted that JKO's Contempt Order

was a legal "nullity" as the appropriate procedure had not been followed, i.e., JKO failed to present his proposed findings of fact and conclusions of law in the form of a "Report and Recommendation" to the District Court for its review as required under the circumstances of all Article I judges. Instead JKO simply issued the Contempt Order ignoring his obligations. Based upon JKO's failure to follow the appropriate protocol and submit his Report and Recommendations to the District Court, Judge Cooke found the District Court lacked jurisdiction over the matter. Rather than simply dismissing the appeal for lack of jurisdiction, Judge Cooke held JKO's Contempt Order a nullity and then dismissed the appeal based upon lack of jurisdiction. It is this aspect of Judge Cooke's Order which was appealed to the Eleventh Circuit Court of Appeals. Despite the pending appeal to the Eleventh Circuit Court of Appeals, the *last* Contempt Order was found to be a nullity[3].

On February 14, 2020, when the District Court dismissed the Appeal, the Sanders Chapter 11 case was concluded for over six (6) years and closed for over four months. Immediately following the February 14, 2020 dismissal of the District Court Appeal, the temporary bankruptcy judge, Paul G. Hyman ("PGH") who was sitting in the Fort Lauderdale Division until JKO's replacement was invested, *sua sponte* and without notice or hearing, reopened the dismissed and closed bankruptcy case and issued a new Order Directing Turnover of Trust Accounting and Bank Records [ECF# 370] (the "Turnover Order") which required the ***filing and service*** of confidential client trust account records. PGH's new Order was signed on Sunday February 23, 2020 and docketed on February 24, 2020 so that it was entered during the fourteen day (14-day) stay of a District Court Order (pursuant to Rule 8025).

---

[3] The issue of the current appeal before the Eleventh Circuit Court of Appeals is not related to the District Court finding related to the JKO Contempt Order as a legal "nullity", but related to whether the District Court lacked jurisdiction over the matter.

When Appellant raised objections and sought additional time to resolve issues due to the Covid pandemic, PGH entered an "Order Denying Motion to Extend and Directing Turnover of Trust Accounting and Bank Records [ECF# 393] (the "Extension Denial Order"). Thereafter PGH entered the "Order Suspending Tina M. Talarchyk From Practice Before This Court And Referring Her to the Florida Bar For Investigation [ECF# 398] (the "Suspension Order") which suspends Appellant from practice before the Bankruptcy Court of the Southern District of Florida, as well as refers her once again to the Florida Bar for "not complying" with JKO's prior Orders.

The Orders on appeal misinterpret the record and are based upon a clearly erroneous recitation of facts. In fact, the Turnover Order relied upon a 2014 Order that had been modified and merged into a subsequent Order by JKO and was no longer operative [ECF# 270]. Appellant has complied with the JKO Orders: The money was paid to the Clerk [ECF# 340-1]. The records were turned over to the Florida Bar, and the Bar accomplished the review. The contempt/incarceration was deemed a nullity. The Orders under review should be vacated/quashed with the underlying Bankruptcy Case closed in its entirety and the Clerk ordered to return the $10,949.50 that Appellant placed with the Clerk on January 16, 2016, back to Appellant.

The PGH Orders ignore or erroneously find that the Appellant did *not* place funds with the Clerk of the Court which was in fact done in January 2016, and that Appellant failed to file and serve the required trust account records, despite Appellant compiling and submitting said records to the Florida Bar auditor, who performed a thorough review of said trust account records.[4]

The JKO Contempt Order which the District Court recently found was a "nullity" included the paragraph that: "Talarchyk is hereby REMANDED to the custody of the United States Marshal to be held pending (a) payment of $10,949.50 to the Clerk of this Court as directed above." [ECF#

---

[4] On June 8, 2017, Appellant paid $10,234.02 to the Florida Bar which was its auditor's fee.

338].  The payment of $10,949.50 to the Clerk of the Bankruptcy Clerk was made the following day, January 20, 2016, where it remains to date.  Soon after the prior bankruptcy judge's ("JKO") term expired, the District Court entered an Order ("Cooke 2020 Order") which found that JKO's Contempt Order a legal "nullity" as the appropriate procedure had not been followed, i.e., JKO failed to present his proposed findings of fact and conclusions of law in the form of a "Report and Recommendation" to the District Court for its review as required under the circumstances of all Article I judges.  Instead JKO simply issued the Contempt Order ignoring his obligations.  Based upon JKO's failure to follow the appropriate protocol and submit his Report and Recommendations to the District Court, Judge Cooke found the District Court lacked jurisdiction over the matter.  Rather than simply dismissing the appeal for lack of jurisdiction, Judge Cooke held JKO's Contempt Order a nullity and then dismissed the appeal based upon lack of jurisdiction. It is this aspect of Judge Cooke's Order which was appealed to the Eleventh Circuit Court of Appeals.  Despite the pending appeal to the Eleventh Circuit Court of Appeals, the *last* Contempt Order was found to be a nullity[5].

The PGH Orders require that "any and all trust account records" related to the Sanders bankruptcy case be "filed and served" upon all interested parties by March 9, 2020.  It was explained to PGH that the Appellant's client objected to the "turnover" of any financial records to any third parties, or to the financial records being publicly filed on the docket. The PGH Orders fail to address the Debtor's objection to her business records (Appellant's Trust Account records) being filed and served.  This is significant because as noted herein, if Appellant complies with PGH's directives she will be committing an ethical violation related to her client (the Debtor).  The

---

[5] The issue of the current appeal before the Eleventh Circuit Court of Appeals is not related to the District Court finding related to the JKO Contempt Order as a legal "nullity", but related to whether the District Court lacked jurisdiction over the matter.

PGH Orders completely lack any reference to the fact that Appellant complied with the JKO Orders and deposited the $10,949.50 "allowed" award with the clerk of the bankruptcy court on January 16, 2016 (where it remains to date) and after the Florida Bar's review of Appellant's Trust Account records, Appellant paid $10,234.02 to the Florida Bar auditors on June 17, 2017. Everything that was ordered by JKO was completed as the Trust Account records were turned over to The Florida Bar, audited, and the investigation was closed June 1, 2017. A review of the record and of the Motions filed before PGH illustrate that PGH has chosen to ignore the record and instead, reissue an Order that was superseded by JKO and merged into a later Order, that required an Examiner, and then when that Order was referred to the Florida Bar, the Bar proceeded with the review.

## <u>SUMMARY OF THE ARGUMENT</u>

The Bankruptcy Court exceeded its authority and lacked jurisdiction to enter the Orders under review. The case was reopened improperly, with no hearing, at a time when there was an automatic stay pending review. "Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction." *Piper v. Pearson*, 2 Gray 120, as cited in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872). Additionally, the Bankruptcy Court relied upon an Order that had been superseded, merged into a later Order and had no further effect, and therefore the foundation of the Orders is non-existent and the results erroneous. Moreover, the Bankruptcy Court overlooked the facts that the material terms of the prior Orders were complied with by payment to the Clerk and a thorough review of the subject records was performed by the Florida Bar – as referred to it by the Bankruptcy Court. Accordingly, the underlying tasks were performed long ago. In re-issuing the superseded requirement that the Trust Account and Bank records be "filed and served", the Bankruptcy Court issued an untenable requirement that put Appellant in a

"Catch-22" where she could not disclose her client's confidential records and information when instructed to refuse to do so.  By denying additional time to reasonably address pending issues, in the middle of a global pandemic, statewide emergency and forced quarantine, the Bankruptcy Court compounded its error and illustrated its improper motive.  The Orders under review must be quashed.

## **ARGUMENT**

The "**Court Mission Statement**" of the Southern District of Florida Bankruptcy Court is "To promote public trust and confidence in the administration of bankruptcy cases: • through easy access to comprehensible, accurate information about the court, its procedures, and records; • by the efficient, respectful, and dignified conduct of business at all levels of the court—clerk's office, chambers and courtroom; • through adjudication of bankruptcy cases by a fair and impartial tribunal that is designed to provide relief to the honest debtor, equitable distribution of available assets to creditors, and preservation of jobs and value through successful business reorganizations."[6]

The question in this case is not just whether the Consolidated Orders entered by the issuing bankruptcy judge, PGH should be vacated (after a review of the record) but why would a temporary bankruptcy judge reopen a dismissed and closed case and use his authority as an Article I judge to "start over" a six year "litigation" between JKO and appellant in a case with no interested parties, estate, debtor, assets or any remaining administrative issues to be resolved.  Appellant has spent

---

[6]

https://www.flsb.uscourts.gov/sites/flsb/files/documents/publications/Courthouse_Beacon_News_-_August_2020.pdf

six (6) years and tens of thousands of dollars defending herself with no findings of wrongdoing by the Florida Bar.[7]

### A.  **The Orders Under Review Are Erroneous As They Are Founded Upon An Order That Was Superseded, Merged And Satisfied.**

Interestingly, ignoring the fact the only outstanding Order, which had been entered by JKO related to the Appellant, was a legal "nullity" as determined by the District Court, rather, PGH reached back in time and utilized a prior Order[8], in his finding the Appellant failed to comply.  In reality all prior Orders entered by JKO were superseded by and merged into superseded by the January 19, 2016, *Contempt* Order which the District Court found was a legal nullity.  As JKO continued to modify his directives and increase sanctions against the Appellant from the period of 2014 through to 2016 by making modifications to his initial Order (that PGH has now pointed to), all earlier Orders merged with JKO's final Contempt Order.  As of 2020, the only existing order related to the Appellant was the January 19, 2016, Contempt Order, which required turnover to an Examiner appointed by the US Trustee, was the subject of the appeal before the District Court and a Stay Order, and was referred to the Bar, which performed an investigation.

The Florida Bar, as the entity tasked with oversight of Bar members' trust accounts took over as "Examiner" so that the US Trustee did not need to appoint an examiner and subsequently, the U.S. Trustee made it clear that it had no interest in being involved in this case or appeal any

---

[7] *See* Appellant's Motion For Stay Pending Appeal and the attached Exhibits, filed May 28, 2020 [Doc. 10] in 20-60906-RAR (which was consolidated herein) for additional facts to be considered.
[8] The order relied upon by PGH in finding the Appellant in contempt no longer existed based upon the doctrine of merger.  Upon JKO's entry of the January 19, 2016, Contempt Order, the terms and conditions of the December 8, 2014, Fee Order merged with the latter so any requirement of filing or turnover of Trust Account records in the December 8, 2014, Fee Order no longer existed as it was merged into the requirement of turnover to an Examiner appointed by the U.S. Trustee.

further [Doc. 15]. Also, the Debtor as the client, communicated with JKO[9] [ECF## 290-2, 332-3] and the Florida Bar, indicating her support and contentment with not only the results of the Chapter 11 proceeding but also, the work of Appellant.

Each Order by JKO, beginning with the first Fee Application Order (that PGH now refers to) required production of the same trust account records.  However, as time passed, through a series of orders, JKO modified his directives to the Appellant ending with the January 19, 2016, Contempt Order requiring Appellant to turn over the Trust Account Records to the US Trustee-appointed Examiner, and pay funds to the Clerk of Court and directing the U.S. Marshalls to apprehend the Appellant and take her into custody.  The merger argument is further supported by the fact that Appellant placed the funds with the Clerk of the Bankruptcy Court in January of 2016 (**Exhibit "A"**) and after referral by JKO to the Florida Bar within his Contempt Order, an investigation and audit was completed of Appellant's trust account records with no finding of wrongdoing or need for discipline.  It is highly inappropriate and unethical for PGH to now utilize a non-existent Order[10] as his basis for finding the Appellant in contempt, without addressing the objections and the untenable "Catch-22" that Appellant faced by being wrongfully ordered to serve and file her client's confidential and privileged records.

The Orders under review are erroneous on multiple levels.  First, that Order they are founded upon no longer has effect.  Second, that Order was merged into an Order that modified

---

[9] The Debtor asked to be included in the Motion to Recuse asking the Court to "stop" the litigation against Appellant as the Debtor indicated her "joy" regarding the successful reorganization and the receipt of a surplus after the sale which allowed her to buy new apartment buildings in Broward County and continue her real estate business [ECF## 290-2, 332-3].

[10] The First JKO Order had the original conditions of filing the records on the Court Docket which then modified with the appointment of the United States' Trustee's Office ("UST")  being appointed as an "examiner" after JKO acknowledged that the Debtor/Client objected to the public dissemination of her confidential business records as was her right.  The Florida Bar ultimately acted as the "examiner" as was appropriate.

the requirement that Appellant file or serve the Trust Account records (thereby disclosing confidential and privileged financial information contrary to her client's directives) and instead directed that the records be turned over to an Examiner appointed by the U.S. Trustee.  Thereafter, while the case was stayed on Appeal, the records were reviewed by the Florida Bar, so the expressed concern has been met.

**B.  The Bankruptcy Court Exceeded Its Authority When It Sua Sponte Reopened The Closed Bankruptcy Case**

After satisfaction of all creditors through a successful § 363 sale by the Debtor and voluntary dismissal of the matter, on September 9, 2019, the underlying Chapter 11 bankruptcy was closed by the Clerk of the Bankruptcy Court.   However, despite the successful nature of the case and with no justiciable issues existing, without prior notice to any party or a hearing, the Bankruptcy Court *sua sponte* reopened the underlying Chapter 11 bankruptcy.  Furthermore, other than "entered in error", no other explanation as to the reopening of the case was provided by the Bankruptcy Court.  After reopening the case, the Bankruptcy Court engaged in the entry of a series of orders designed to allegedly "coerce" the Appellant in complying with the terms of a non-existent order.

PGH exceeded his authority when he *sua sponte* reopened the fully administered, dismissed and closed Chapter 11 and entered the Consolidated Orders on Appeal.  There are, as is apparent from the record, no parties in interest that have asked PGH to administer any asset or otherwise sought any relief.  Further, each condition that was ordered in the morphed Contempt Order (monies placed with Clerk of Bankruptcy Court and audit of trust account records) have been completed by Appellant.  As a result, here, all of PGH's Orders should be vacated, Appellant's funds should be ordered returned by the Clerk of the Court and the bankruptcy case closed once again as is appropriate in a fully administered case.

The issues and legal authority related to the reopening of a closed bankruptcy case are governed by 11 USC § 350, with the procedures of how to reopen the bankruptcy case set forth by Federal Rule of Bankruptcy Procedure 5010.  11 U.S.C. § 350(b) of the Bankruptcy Code and Bankruptcy Rule 5010 authorizes the Court, *only* on motion of the debtor or another party in interest, to reopen a closed bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." Bankruptcy Rule 9024(1), has limited "reopening" a case to deal with "unadministered assets which were unknown at the time of closure; (ii) amending schedules to add a previously omitted debt or creditor; (iii) avoiding a lien impairing exempt property; (iv) granting the debtor a discharge if the case was closed before a discharge was granted; and (v) enforcing the discharge injunction under section 524(a) of the Bankruptcy Code. See generally, Collier on Bankruptcy ¶ 350.03 (16th ed. 2016).

As was noted in Anna Kordas' *Ruling Provides Guidance on Standard to Reopen Fully Administered Chapter 11 Case "for Other Cause"* (Jones Day Bankruptcy Articles) (September 30, 2016), which analyzed the New York bankruptcy case of *In re Atari*, 2016 BL 125936 (Bankr. S.D.N.Y. Apr. 20, 2016):

> Courts are generally reluctant to reopen closed cases. Reopening a case removes the element of certainty and finality that comes with full administration of an estate and entry of a final decree. For this reason, courts consider a number of factors in determining whether reopening a case is justified under the particular circumstances of each case. For example, bankruptcy courts in the Southern District of New York have applied the following six-factor test:
> -The length of time that the case was closed;
> -Whether a non-bankruptcy forum has jurisdiction to determine the issue cited for reopening the case;
> -Whether prior litigation in the bankruptcy court determined that another court would be a more appropriate forum;
> -Whether any parties would suffer prejudice if the court grants or denies the motion to reopen;
> -The extent of any benefit to any party by reopening the case; and
> -Whether it would be futile to reopen the case because the requested relief cannot be granted.

See *In re Easley-Brooks*, 487 B.R. 400 (Bankr. S.D.N.Y. 2013); In re PlusFunds Grp., Inc., 2015 BL 113361 (Bankr. S.D.N.Y. Apr. 21, 2015) (The moving party bears the burden of establishing "other cause" to reopen.).

Due to the status of the underlying bankruptcy, the case being fully administered, *none* of the *Easley-Brooks* factors are implicated here. In fact, the record demonstrates no unadministered assets; no omitted creditors; no remaining liens; no need for a discharge as all debt was paid and *no one* is seeking to enforce the "discharge injunction" as all creditors were fully satisfied from the proceeds of a § 363 sale, not partially satisfied by payment through a confirmed plan, there was no discharge entered, therefore no discharge injunction. As none of the *Easley-Brooks* factors exist supporting the reopening of the underlying case, there is no valid reason to the Bankruptcy Court should have *sua sponte* reopened the case. A point supported by the fact no party in interest, the debtor, nor a trustee sought to reopen the case. Rather, the case was reopened *sua sponte* for no articulated reason by PGH, other than to continue JKO's actions against the Appellant, despite Appellant's compliance with JKO's orders and a finding by the District Court the final JKO Order was a nullity. Appellant completed every aspect of JKO's Orders by placing the "awarded fees" with the Bankruptcy Court Clerk's Office on January 19, 2016, Appellant's Trust Account records were reviewed by the Florida Bar with no disciplinary action taken against Appellant and paid all of costs of the Florida Bar's auditor. PGH has ignored these record events and reissued more such Orders in the brief time that he had on the Bankruptcy Bench, seemingly rushing to get the Orders issued with a suspension at the Bankruptcy Court level and threatened at the District Court[11] level, and another referral to the Florida Bar (after the prior investigation on the same matter).

---

[11] PGH's sending of his Suspension and Referral Order was *not* listed in the "CC" or CM/ECF list of recipients. Appellant had no idea that it was done "secretly" as is discussed in the Motion for Stay Pending Appeal [Doc. 10].

As no valid basis pursuant to 11 U.S.C. § 350 to reopen the underlying Chapter 11 bankruptcy exists, the Bankruptcy Court's inherent power pursuant to 11 U.S.C. § 105 is the only other mechanism the Bankruptcy Court could have reopened the Chapter 11 bankruptcy. It is well settled law a bankruptcy court possesses inherent powers pursuant to 11 U.S.C. § 105. 11 U.S.C. 105(a) provides in pertinent part:

> "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

A Bankruptcy Court's utilization of Section 105 has been addressed by numerous appellate courts throughout the country. In *DeLauro v. Porto (In re Porto),* 645 F.3d 1294 (11th Cir. 2011), the Eleventh Circuit of Appeals, relied upon a decision by the Tenth Circuit Court of Appeals. In its conclusion, the Eleventh Circuit agreed with the Tenth Circuit "that § 105 [was] intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in [Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991)]," in which the Supreme Court recognized the inherent power of a federal district court to sanction "conduct which abuses the judicial process." *In re Courtesy Inns, Ltd*., 40 F.3d 1084, 1089 (10th Cir. 1994).

However, the inherent power does not bestow unbridled power upon the Bankruptcy Court. This inherent power comes with certain requirements. Initially, prior to invoking its inherent powers, a court must make a finding of bad faith. *Chambers* 301 U.S. at 49, 111 S.Ct. at 2135, 115 L.Ed.2d at 48. But, most importantly is the requirement of due process. In this matter, prior to utilizing its inherent powers under § 105, the Bankruptcy Court neither noticed any party nor conducted any hearing regarding the reopening.

In the case of *Law v. Siegel*, 134 S. Ct. 1188, 188 L.Ed.2d 146, 82 USLW 4140 (2014), the Court discussed 11 U.S.C. § 105(a), and the bankruptcy court's "inherent power.  In *Law*, the Court held that a "bankruptcy court may not exercise its authority to "carry out" the provisions of the Code, 11 U.S.C. § 105(a), or its "inherent power ..., by taking action prohibited elsewhere in the Code."  *Id.* at 134 S.Ct. at 1191.  In *Law*, the Bankruptcy Court ordered that the $75,000 protected by the Debtor's homestead exemption should be made available to pay the Trustee's attorney's fees.  The *Law* Court held that:

> Here, the Bankruptcy Court's "surcharge" contravened § 522, which (by reference to California law) entitled Law to exempt $75,000 of equity in his home from the bankruptcy estate, § 522(b)(3)(A), and which made that $75,000 "not liable for payment of any administrative expense," § 522(k), including attorney's fees, see § 503(b)(2). The surcharge thus exceeded the limits of both the court's authority under § 105(a) and its inherent powers.

The *Law* Court noted as follows on the Bankruptcy Court's authority to act pursuant to §105:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. See *Morton v. Mancari*, 417 U.S. 535, 550–551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 206–208, 52 S.Ct. 322, 76 L.Ed. 704 (1932).1 Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions. *Degen v. United States*, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code.

In the instant case, based upon Bankruptcy Code section 11 USC § 350(a) which states: "After an estate is fully administered and the court has discharged the trustee, the court *shall* close the case" (Emphasis added), it was improper to reopen the instant case.  Ast § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code"

then there can be no other conclusion other than that the *sua sponte* reopening of the underlying Chapter 11 was improper and that the Orders entered after the reopening must be vacated.

Additionally, in the vernacular of the bankruptcy code, if the instant case were analyzed as the "two-party dispute" which the record indicates that it is, the matter should be dismissed as there is a "general presumption that the bankruptcy courts should avoid taking jurisdiction over two-party disputes." *In re E.S. Professional Services, Inc.*, 335 B.R. 221,226 (Bankr. S.D. Fla. 2005), citing *In re Axl Industries, Inc.*, 127 B.R. 482, 484 (S.D.Fla.1991).  See also, *In re C&C Dev. Grp., LLC* (Bankr. S.D. Fla. 2012) (at 2).  The "two-party dispute" analysis is generally reviewed when a Petitioning Creditor has filed an involuntary bankruptcy petition against a debtor and the bankruptcy court must analyze whether the involuntary petition should be dismissed or maintained.  If the answer to the "two party dispute" question is "yes", then the bankruptcy court should *not* take jurisdiction over the matter.

In the 1990 Eleventh Circuit Court of Appeal case of *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990), the Court reviewed issues associated with a collateral attack of a Confirmed Chapter 11 Plan of Reorganization by "interested parties" that had not only participated in the Plan process but also had filed a an adversary proceeding raising issues that were addressed in the Chapter 11 Debtor's Confirmed Plan of Reorganization.  The interested parties ("Wallises"), who were unsecured creditors, objected to the *Justice Oaks* Debtor's proposed Plan of Reorganization (as it proposed payment to the secured creditors (only) after a sale of real estate that the secured creditors had valid liens).   The *Justice Oaks* Court held that:

> "The bankruptcy court's order confirming the plan satisfies the four essential elements of claim preclusion. When all of the requirements of claim preclusion are satisfied, "the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter which was actually offered and received to sustain the demand, but

also as to every [claim] which might have been presented." Citing *Baltimore S.S.*, 274 U.S. at 319, 47 S.Ct. at 602.

*Id.* at 1552.

The *Justice Oaks* case held that because the Wallises participated in the Chapter 11 process (with full notice of all activities) and only objected *after* the Debtor's Chapter 11 Plan confirmed that they were "barred from relitigation on the ground of *res judicata*[.]"[12] *Id.* at 1554. In the instant case, while there are no "interested parties" who sought to reopen the underlying bankruptcy case. *If* someone who participated in the underlying Chapter 11 process wanted to go back and revisit what they were paid after the § 363 sale (the amount of their claim), they would be prohibited from doing so based upon claim preclusion, law of the case and *res judicata*. Additionally, anyone that wants to contest an Order of the bankruptcy court must have standing to do so. Article III standing "represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). "We analyze three elements for Article III standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The first of these is injury in fact "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted) (citations omitted). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 560. Also, "a person is not 'aggrieved' when the interests harmed . . . are not interests the Bankruptcy Code seeks to protect or regulate." *Ernie Haire Ford*, 764 F.3d at 1326 (*citing Kabro Assocs. of West Islip*, 111 F.3d at 273–74). In the instant matter there are no "interested parties" who would be able to make the argument that they

---

[12] The *Justice Oaks* Court indicates that the District Court relied upon the concept of *res judicata* and then clarified that the Court was also relying upon the concepts of "claim preclusion" and "law of the case".

are "aggrieved" and PGH's reopening of the closed case to once again try to refer the Appellant to the Florida Bar and suspend her bankruptcy privileges does not in any way involve any "interest the Bankruptcy Code seeks to protect or regulate." *Id.*

If a former creditor is prohibited from trying to relitigate final bankruptcy orders that same standard should apply to a *temporary* bankruptcy judge. Here, there are *no* former creditors or interest parties who have sought relief since March 10, 2014. The record indicates that PGH is the only "interested party" who unilaterally reopened the closed case in order to relitigate issues that Appellant has already satisfied and the District Court found to be a nullity.

### C. No Justiciable Issue

In the Santa Clara Law Review Article, *Basic Justiciabiuty Analysis*, Russell W. Galloway Volume 30, No. 4, Article 1 (1990), justiciability requirements were discussed as follows:

> The claim must arise in the context of an actual "case or controversy" between adverse parties, and the constitutional issue must itself be justiciable. The "judicial power" vested in the federal courts by article III of the United States Constitution extends only to nine categories of "Cases" and "Controversies." As the Supreme Court has put it, "By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs." *Federal courts are only permitted to decide actual disputes between parties whose interests are adverse.* "[ ] issues ... will not be determined in friendly, nonadversary proceedings...." Put another way, "The controversy must be definite and concrete, touching legal relations of parties having adverse legal interests.... It must be a real and substantial controversy[.]" "[T]he most prominent, most continuously articulated boundary of justiciability.. . [is that] federal courts will not give 'advisory opinions." "The rule goes back at least to 1793, when the Justices of the Supreme Court declined a request from President Washington and Secretary of State Jefferson to answer a series of abstract questions concerning America's role as a neutral toward a war between England and France." "Ever since, it has been accepted that federal courts cannot give advisory opinions." "A corollary of the rule against advisory opinions is the rule that federal courts should not decide federal issues in a case whose outcome is determined by an independent and adequate state ground." In such cases, the decision on the federal issue would not affect the outcome and would therefore be purely advisory. "We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion."

*Id.* at 913 – 914. (Emphasis added).

In the instant case, as described above, there is no case or controversy and there are no adverse parties and clearly no justiciable issues.  There is not even evidence of any party requesting an advisory opinion.  Rather, the record reveals an attempt to use a closed bankruptcy case for extrajudicial[13] purposes.[14]

### D.  <u>The Bankruptcy Court Erred In Entering Orders In Violation Of Rule 8025, FRBP</u>

The underlying bankruptcy case was closed when Judge Cooke entered her Order dismissing the Appeal and finding the JKO Arrest Order a "nullity" (on February 14, 2020) and PGH reopened the case *sua sponte*. The Turnover Order was signed on Sunday February 23, 2020 and docketed on February 24, 2020. Thus it was entered during the fourteen (14) day stay of a District Court Order (pursuant to Rule 8025).  Federal Rule of Bankruptcy Procedure 8025(a), *Stay of a District Court or BAP Judgment* provides that "[u]nless the district court or BAP orders otherwise, its judgment is stayed for 14 days after entry."  As noted in *Credit One Bank, N.A. v. Anderson (In re Anderson)*, 560 B.R. 84 (S.D.N.Y. 2016), "Rule 8025 has been consistently held, in cases construing its predecessor, to follow the same standard used for staying actions of a lower court. *See In re New York, Skyline, Inc.* , 520 B.R. 1, 3–4 & n.4 (S.D.N.Y. 2014) (discussing rule 8017(b)); see also *Hirschfeld v. Bd. of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (discussing Rule 8 of the Federal Rules of Appellate Procedure).

---

[13]  The Black's law dictionary defines extrajudicial as that which is done outside the course of regular judicial proceedings; not founded upon a court of law.

[14]  "That which, though done in the course of regular judicial proceedings, is unnecessary to such proceedings, or interpolated, or beyond their scope; as an extrajudicial opinion." https://dictionary.thelaw.com/extrajudicial/

## <u>CONCLUSION</u>

For the reasons set forth above, the Bankruptcy Court exceeded its authority and lacked jurisdiction to enter the Orders under review.  The case was reopened improperly, with no hearing, during an automatic stay pending review.  Additionally, the Bankruptcy Court relied upon an Order that had been superseded, merged into a later Order and had no further effect, and overlooked the facts that the material terms of the prior Orders were complied with by payment to the Clerk and the Bar's review of the subject records.  The Bankruptcy Court's headlong "rush to Judgment" during his fleeting time in the Division as a "fill-in", and refusing to consider objections or allow more time during a pandemic when there was a state of emergency and quarantine, simply illustrates the impropriety of the Orders under review.  Appellant requests that the Turnover Order [ECF# 370], the Extension Denial Order [ECF# 393] and the "Order Suspending Tina M. Talarchyk from Practice Before This Court, And Remanding Her To The Florida Bar for Investigation" [ECF# 398] be quashed, and this case be remanded for dismissal of the proceedings and closure of the case below.

## <u>CERTIFICATE OF COMPLIANCE</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

By:     /s/ Douglas C. Broeker
Douglas C. Broeker, Esq.
Florida Bar No. 306738

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via Regular U.S. Mail to all parties who are not on the list to receive e-mail notification/service for this case, on this 17th day of August, 2020.

Respectfully submitted,

By:      /s/ Douglas C. Broeker

Douglas C. Broeker, Esq.
Florida Bar No. 306738
**SWEETAPPLE, BROEKER & VARKAS, P.L.**
12700 Biscayne Blvd., Suite 402
Miami, Florida 33181
Tel.: (305) 374-5623
Fax: (305) 358-1023
Doug@broekerlaw.com
DocService@broekerlaw.com